# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

TRACY L. OWENS,

        Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

No. 17-CV-86-LTS

**REPORT AND
RECOMMENDATION**

_____

Tracy L. Owens ("claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the following reasons, I respectfully recommend that the District Court **reverse and remand** the Commissioner's decision.

## I.    BACKGROUND

I adopt the facts as set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent facts here. (Doc. 15). Claimant was born in 1964, and alleged a disability onset date of June 20, 2013, making her forty-eight years old on the alleged disability onset date. (AR 12, 25).[1] Claimant graduated from high school in 1982 and received her radiation therapy license in 1985. (AR 22).

The Social Security Administration denied the claim initially and on reconsideration. (AR 96-99, 102-11). ALJ Henry Hamilton held a hearing on the matter

---

[1] "AR" refers to the administrative record below.

and issued a decision denying the claim on March 24, 2016. (AR 12-26). On June 6, 2017, the Appeals Council denied review. (AR 1-4). The ALJ's decision therefore became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On July 28, 2017, claimant timely filed the instant complaint in this Court. (Doc. 3). Between January and February 2018, the parties briefed the issues. On February 28, 2018, the Court deemed this case ready for decision, and the Honorable Leonard T. Strand, Chief United States District Judge, referred this case to me for a Report and Recommendation.

## II. *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to her physical or mental impairments, "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R.

§ 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. (*Id.* § 404.1572). "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit. (*Id.*).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. *Id.* § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. 404.1521 (2015).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his past relevant work, then he is considered not disabled. (*Id.*). Past relevant work is any work the claimant

performed within the fifteen years prior to her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. (*Id.* § 416.960(b)). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite . . . her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted). The RFC is based on all relevant evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2). The Commissioner must show not only that the claimant's RFC will allow her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of fairly and fully developing the record before making a determination about the existence of a disability. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III.   THE ALJ's FINDINGS

The ALJ made the following findings at each step with regard to claimant's disability status:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since her alleged onset date.  (AR 14).

At Step Two, the ALJ found that claimant suffered from the following severe impairments: "diabetes mellitus; narcolepsy with cataplexy; chronic kidney disease sta[g]e 3-4; and major depressive disorder, moderate."  (*Id.*).

At Step Three, the ALJ found that none of claimant's impairment met or equaled a presumptively disabling impairment listed in the regulations.  (AR 15).

At Step Four, the ALJ determined that claimant had the residual functional capacity ("RFC") to perform light work,

> such that she could lift and/or carry 20 pounds occasionally and 10 pounds frequently.  The claimant can sit for up to six hours of an eight hour workday and stand and/or walk for up to six hours of an eight hour workday.  Her ability to push and/or pull, including the operation of hand and foot controls, is unlimited within the above weight limits.  The claimant can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds.  She can occasionally balance, stoop, kneel, crouch and crawl.  The claimant can never operate a motor vehicle.  She is limited to simple, routine, repetitive tasks involving only simple work-related decisions.  The claimant's time off task can be accommodated by normal breaks.

(AR 15).  Based on the ALJ's RFC assessment, the ALJ determined that claimant was unable to perform her past relevant work.  (AR 25).

At Step Five, the ALJ found that, despite claimant's RFC, there were jobs that existed in significant numbers in the national economy that claimant could perform, including routing clerk, mail clerk, and folder.  (AR 25-26).  Therefore, the ALJ concluded that claimant was not disabled.  (AR 26).

## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ..").  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (internal quotation marks omitted).  The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence . . . [that] allows for the possibility of drawing two inconsistent conclusions[;] thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989).  The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v.*

*Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Claimant alleges that the ALJ erred by: 1) not finding claimant's chronic diarrhea was a severe impairment; 2) failing to determine whether claimant's failure to find an effective stimulant to treat her narcolepsy symptoms was justified; 3) failing to provide good reasons for assigning little weight to Dr. Geisler's opinions; 4) failing to determine whether claimant medically equaled Listing 11.02; and 5) failing to include any absences or unscheduled breaks in the ALJ's RFC assessment. (Doc. 16). I will address each of these allegations in turn.

### A. Chronic Diarrhea

Claimant argues that the ALJ wholly failed to account for claimant's diarrhea, which allegedly occurred at least twice per week and lasted between twenty-four and forty-eight hours. (Doc. 16, at 4). Claimant explains that "once she felt she needed to use a toilet, she would have two or three minutes to get there about three to four times a

day." (*Id.* (internal quotation marks omitted)). Claimant further argues that the ALJ's failure to account for claimant's diarrhea led the ALJ to fail to include diarrhea-related restrictions in his RFC. (*Id.*, at 5). Finally, claimant argues that this error was not harmless because "the vocational expert testimony was that additional limitations that included frequent bathroom breaks precluded competitive employment, and specifically testified that a need for a 15-minute break every hour precluded competitive work." (*Id.*).

In response, the Commissioner argues that the ALJ did consider claimant's diarrhea and found claimant's allegations as to her diarrhea to lack credibility, just as he found the remainder of claimant's statements to lack credibility. (Doc. 17, at 6). The Commissioner further argues that claimant's diarrhea did not occur as frequently as she now alleges and that even if the ALJ did err in not finding claimant's diarrhea to be a severe impairment, "any potential error was harmless because the ALJ proceeded past step two." (*Id.*, at 7).

I first note that the ALJ's discussion of how he determined which of claimant's impairments were "severe" is brief and non-specific. (*See* AR 14). That does not, however, mean that the ALJ did not duly consider all of the evidence brought before him in determining which of claimant's impairments rose to the level of "severe." Turning to the evidence contained within the ALJ's discussion of claimant's RFC, I find that the ALJ duly considered claimant's alleged diarrhea and found that claimant did not experience diarrhea of the severity alleged. (*See* AR 23). The ALJ detailed claimant's treatment and subjective allegations before turning to an assessment of claimant's credibility. Among the issues the ALJ discussed was claimant's diarrhea. (*See, e.g.*, AR 17-18, 21-22). Although the ALJ seemed to accept that claimant suffered from some degree of diarrhea, the ALJ discounted claimant's credibility as a whole:

> No one doubts the claimant experiences some physical and mental health symptoms. The issue to be determined is if the severity of the

> claimant's symptoms with resultant functional limitations constitutes a disabling condition within the meaning of the Social Security Act. . . .
>
> After careful consideration of the evidence, the [ALJ] finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 23-24). The ALJ went on to explain that the record does not fully support claimant's allegations. (AR 24). Claimant does not contest the ALJ's credibility findings.

Although the ALJ did not directly discuss claimant's diarrhea in his credibility assessment, it is clear from reading the ALJ's credibility assessment in context that the ALJ found claimant to be lacking credibility in all of her allegations. Otherwise stated, the ALJ found that the medical evidence lacked support for claimant's allegations as to severity to the point that the ALJ looked upon all of claimant's allegations with skepticism. This is not improper, nor has claimant alleged that it is. Rather, claimant has merely alleged that the ALJ failed to account for claimant's diarrhea, which is inaccurate. As such, I find that the ALJ did not err with respect to his consideration of claimant's alleged diarrhea.

### B. *Effective Stimulant for Narcolepsy Symptoms*

Claimant next argues that the ALJ's reliance on claimant's noncompliance with recommended treatment was in error. (Doc. 16, at 5). Because claimant's noncompliance was justified, claimant argues, the ALJ could not properly rely on that noncompliance to deny benefits. (*Id.*). Specifically, claimant alleges that "the ALJ faulted [claimant] for not obtaining stimulants to treat her narcolepsy and cataplexy symptoms[, but] at the hearing[,] the ALJ did not inquire as to [claimant's] reasons for not obtaining a stimulant to address her narcolepsy and cataplexy symptoms." (*Id.*, at 7).

The Commissioner, in turn, argues that the ALJ discussed claimant's noncompliance only in assessing claimant's credibility. (Doc. 17, at 7-8). From there, the Commissioner reasons that claimant misunderstood the credibility discussion as making a noncompliance determination under SSR 82-59 or 20 C.F.R. § 404.1530. (*Id.*, at 8). As discussed above, claimant does not contest the ALJ's credibility determination. Based on this line of thinking, then, the Commissioner concludes that claimant does not actually raise a legitimate point of contention because the issue claimant attempts to raise—noncompliance—is, actually, not an issue. (*Id.*). Although the Commissioner proceeds to analyze the ALJ's credibility determination in depth, claimant does not argue that the ALJ's credibility determination was flawed. As a result, I will not address whether the ALJ's credibility determination was sound.

The ALJ's discussion of claimant's noncompliance with taking prescribed medications was minimal. The ALJ noted that claimant stopped taking Adderall (AR 19), started taking Methylphenidate but stopped (AR 19-20), and did not investigate alternative medications when requested by her doctor. (AR 20). The most significant discussion of claimant's noncompliance came when the ALJ discussed why he discounted claimant's credibility:

> Although the claimant has alleged a myriad of limitations related to her narcolepsy, the record does not fully support the claims. To the contrary, the evidence shows the claimant maintained the ability to concentrate and record detailed notations of alleged events of narcolepsy. The level of detail contained within the 70 plus diary pages recorded by the claimant is inconsistent with her allegations. *Further, the record reveals that the claimant failed to follow-up on recommendations made by Dr. Geisler regarding narcolepsy medications, which also suggests that the symptoms may not have been as serious as has been alleged.*

(AR 24 (emphasis added) (citation omitted)). The ALJ did not make a finding, or even suggest, that the reason for the adverse disability determination was claimant's

noncompliance with treatment under SSR 82-59, 1982 WL 31384 (1982). That is, however, what claimant seems to suggest. (*See* Doc. 16, at 7-9 (citing and quoting SSR 82-59, then explaining why claimant's noncompliance was justifiable within the terms of SSR 82-59)).

Further, a crucial element of the SSR 82-59 analysis is missing from the ALJ's opinion. The Regulations provide that if an ALJ finds an individual not disabled for reason of noncompliance, the ALJ must also find that the treatment that was prescribed and not followed would be "clearly expected to restore capacity to engage in any [substantial gainful activity] . . .." 1982 WL 31384, at *1. Here, the ALJ made no such finding. The absence of such a finding does not, however, undercut the ALJ's opinion. Rather, the absence of such a finding indicates that the ALJ did not intend to implicate SSR 82-59. This is so because SSR 82-59 is premised on the notion that a treatable impairment would render an individual not disabled if the individual were to follow the prescribed treatment plan. *See generally* SSR 82-59. If an individual cannot be rendered not disabled by following the prescribed treatment plan, it would make no sense to find the individual not disabled for noncompliance. This would amount to a penalty for not following a treatment plan that would make no difference as to an individual's disability status.

Here, because there is no indication that the ALJ considered whether claimant would be capable of engaging in substantial gainful activity had she followed her prescribed treatment plan, claimant's reliance on SSR 82-59 is misplaced. As such, I find that the ALJ's reliance upon claimant's noncompliance in assessing claimant's credibility was not erroneous.

## C. Dr. Geisler's Opinions

Claimant argues that the ALJ erred in assigning Scott Geisler, M.D.'s opinions little weight. In support of this argument, claimant asserts that Dr. Geisler's opinions "were consistent with the substantial evidence in the record and [were] well supported by medically acceptable clinical and laboratory diagnostic techniques." (Doc. 16, at 13). Therefore, claimant requests that the Court reverse and remand the case with instructions to the Commissioner to grant controlling weight to Dr. Geisler's opinions. In the alternative, claimant argues that "because Dr. Geisler's limitations preclude competitive work, and Dr. Geisler's limitations should be afforded controlling weight, [claimant's] claim should be remanded for an award of benefits." (*Id.*).

The Commissioner argues that "[t]he ALJ properly found Dr. Geisler's June 18, 2015, medical source statement, completed at [claimant's] attorney's request, was not persuasive." (Doc. 17, at 11). The Commissioner further argues that the ALJ correctly found that Dr. Geisler's statement was "vague in that it did not offer any specific limitations, but instead indicated variable sleepiness." (*Id.*, at 12). The Commissioner further emphasizes that Dr. Geisler's medical treatment notes indicated "that when [claimant] took her prescribed medication, she was less tired while driving and capable of being productive at work." (*Id.*, at 12-13).

The ALJ's discussion of the weight given to Dr. Geisler's opinions and the reasons for affording Dr. Geisler's opinions such weight is as follows:

> The [ALJ] is not persuaded by this opinion. It is not stated in terms of specific functional limitations; but is instead vague and difficult to apply directly into a residual functional capacity assessment. Additionally, the doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness and the opinion contrasts sharply with the other evidence of record, which renders it less persuasive.

(AR 20-21). Although it is a bit difficult to decipher which opinion the ALJ was referring to, it would appear that the ALJ was referencing Dr. Geisler's Physical Medical Source Statement. The parties, by their briefs, seem to agree that this was the opinion to which the ALJ referred.

Finally, before proceeding to my analysis, I must point out that claimant misstates the weight the ALJ afforded to Dr. Geisler's opinion. Although claimant argues that the ALJ improperly afforded Dr. Geisler's opinion "little weight," the ALJ did not afford Dr. Geisler's opinion little weight. The ALJ merely stated that he found Dr. Geisler's opinion to be "less persuasive." (AR 20). Although "less persuasive" could amount to "little weight," the ALJ does not explicitly use that term, and I cannot make that assumption. Likewise, the ALJ just as easily could have afforded Dr. Geisler's opinion controlling weight, even though he found the opinion "less persuasive." It is simply unclear how much weight the ALJ afforded to Dr. Geisler's opinion. However, because the requirements of an ALJ are greater when affording a treating source's opinions less than controlling weight, I will assume, *in arguendo*, that the ALJ afforded Dr. Geisler's opinion less than controlling weight.

"A treating physician's opinion is given controlling weight 'if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007) (quoting *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005)). "However, while entitled to special weight, it does not automatically control, particularly if 'the treating physician evidence is itself inconsistent.'" *Id.* (quoting *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995)). "A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination." *Id.* at 745. When a treating source's opinion is not supported by clinical or diagnostic data, the ALJ

may properly afford it less than controlling weight.  *Vega v. Colvin*, 128 F. Supp.3d 1121, 1130-31 (N.D. Iowa 2015) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995)).

The ALJ explained that he found Dr. Geisler's opinion less persuasive because it was vague, was unsupported by "significant clinical and laboratory abnormalities," and because the opinion was inconsistent with the rest of the evidence of record.  (AR 21). A treating physician's vague, conclusory statements are deserving of no greater respect than a non-treating physician's opinion.  *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014).  Although the Eighth Circuit Court of Appeals was directly addressing opinions contained on checkbox forms in *Toland*, the same principle is applicable here.

Many of Dr. Geisler's opinions were in the form of checked boxes.  (*See* AR 565-69).  Dr. Geisler also provided a few written opinions, though those opinions were limited.  With respect to sitting, standing, and walking, Dr. Geisler vaguely opined that claimant's ability to sit, stand, or walk varied "depend[ing] on sleepiness/energy level." (AR 566-67).  Dr. Geisler provided no ranges for claimant's ability to sit, stand, or walk. As a result, the ALJ could not gain any sense of claimant's abilities from Dr. Geisler's opinion.  Further, Dr. Geisler opined that claimant would need unscheduled breaks throughout the day due to sleepiness, and that the frequency of these breaks would be "variable but short naps can be very restorative for 2-4 hrs." (AR 567).  Those "short naps" would need to be fewer than thirty minutes.  (AR 568).  Dr. Geisler opined that claimant was "[c]apable of moderate stress (normal work)," but when asked to explain his answer, merely offered "variable on sleepiness and cataplexy attacks." (AR 568-69). Finally, when asked to "describe any reasons for which claimant would have difficulty working at a regular job on a sustained basis," Dr. Geisler answered "as above variable sleepiness which could interfere some hours/days." (AR 569).

The vague and conclusory assertions offered by Dr. Geisler are of little benefit in assessing claimant's need for unscheduled breaks throughout the day. Dr. Geisler's responses that the severity of claimant's symptoms depend on claimant's "sleepiness," while potentially accurate, resemble form answers. Because checkbox forms also provide form answers, though in a different sense, the Eighth Circuit's holding that opinions contained in checkbox forms are entitled to no special deference is equally applicable here. As such, the ALJ could properly discount Dr. Geisler's opinion based on the vague, conclusory form in which the opinion was offered.

I am persuaded, however, that Dr. Geisler's opinion was supported by scientific testing, and his notes corroborate the opinion he offered. The ALJ stated "[Dr. Geisler's] own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled," but the ALJ did not elaborate upon this statement. (AR 21). To the contrary, Dr. Geisler's notes from April 16, 2014, detail the testing that claimant had undergone in assessing her narcolepsy and cataplexy. (AR 561-64). Although the ALJ addressed the April 16, 2014 report, the ALJ did not address the "PREVIOUS TESTS" section, which does show abnormal test results. (AR 564). It is unclear why the ALJ discussed almost the entirety of the April 16, 2014 report, but failed to even note the existence of the "PREVIOUS TESTS" section.

"Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citations omitted). It would appear, however, that the ALJ relied on the purported absence of abnormal test results in finding Dr. Geisler's opinion "less persuasive." (AR 21). Had the ALJ duly considered the "PREVIOUS TESTS" section, perhaps he would have reached a different conclusion. To be clear, my recommendation does not rest on the mere absence of a discussion of the "PREVIOUS TESTS" section. Rather, my recommendation is based on the ALJ's affirmative

statement that Dr. Geisler's notes did not contain any scientific test results corroborating his opinions. By all appearances, this statement is incorrect.

I recognize that it is equally unclear whether the ALJ afforded Dr. Geisler's opinion controlling weight in spite of finding Dr. Geisler's opinion "less persuasive." (*Id.*). For that reason, I respectfully recommend that the Court reverse and remand the ALJ's decision with instructions to clearly explain the weight afforded to Dr. Geisler's opinion. I further recommend that the Court instruct the ALJ that if he affords Dr. Geisler less than controlling weight, that the ALJ articulate precisely why, which should include a discussion of the "PREVIOUS TESTS" section.

Finally, the ALJ found Dr. Geisler's opinion to "contrast[ ] sharply with the other evidence of record." (*Id.*). I find that the ALJ did provide adequate support for this opinion. Specifically, the ALJ found that claimant's impairments were better controlled when she took her medication as directed (AR 19), claimant was more productive when she took her medication as directed (AR 19-20), and that claimant had normal cognitive capabilities. (AR 20). Claimant does not dispute any of the ALJ's findings of fact in this regard. As such, claimant's argument against the weight afforded Dr. Geisler's opinion disputes whether these facts, as discussed by the ALJ, provide a sufficient basis for the ALJ to discount Dr. Geisler's opinion. I find that they do. The ALJ, as factfinder, is tasked with weighing the evidence. The evidence showing that claimant was able to retain a job when she took her medication as directed and had normal cognitive capabilities could reasonably be found to contradict Dr. Geisler's opinion. Therefore, I find that the ALJ did not err in this respect. I do, however, recommend that the Court reverse and remand the ALJ's decision to reassess the weight afforded to Dr. Geisler's opinion based on previous tests that were conducted, as set forth above.

### D. Listing 11.02

Claimant next argues that the ALJ erred by finding claimant's ailments did not medically equal Listing 11.02.[2] (Doc. 16, at 13-14). Specifically, claimant argues that claimant maintained a symptom log, which showed that her narcolepsy symptoms equaled the symptoms outlined in Listing 11.02. (*Id.*, at 14). Claimant further argues that at the reconsideration stage, the state agency medical consultant "noted that [claimant's] claim should be evaluated under, *inter alia*, the Listing for a seizure disorder." (*Id.*).

In response, the Commissioner argues that claimant has failed to meet her burden of offering medical evidence that would support a finding that claimant's impairments equal those in Listing 11.02. (Doc. 17, at 15-16). The Commissioner asserts that because claimant's Listing 11.02 argument rests on the symptom log, claimant's argument must fail. (*Id.*). Further, the Commissioner states as follows: "Medical evidence is based solely on medical findings. Therefore, claimant's failure to cite any medical findings to support her equivalency argument is fatal." (*Id.*, at 16 (citation omitted)). Finally, the Commissioner asserts that claimant misconstrues the state agency medical consultant's opinion with respect to Listing 11.02 and, in actuality, the consultant found that claimant's symptoms did not medically equal Listing 11.02. (*Id.*).

The ALJ determined at Step Three that claimant's impairments did not meet or medically equal a presumptively disabling listed impairment. (AR 15). At Step Three, the claimant bears the burden of establishing that her impairment meets or equals a presumptively disabling impairment listed in the regulations. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006). "Medical equivalence must be supported by medical findings; symptoms alone are insufficient." *Finch*, 547 F.3d at 938.

---

[2] Both claimant and the Commissioner note that Listing 11.02, which addresses epilepsy, used to be codified as Listing 11.03. As of the date of the ALJ's opinion, however, the relevant impairment did indeed appear in Listing 11.02. As such, I will refer to Listing 11.02 throughout this Report and Recommendation.

Claimant does not contest the ALJ's assessment of the symptom log; claimant only argues that the ALJ should have considered it as evidence in determining whether claimant's narcolepsy met Listing 11.02. The ALJ discussed the symptom log and provided that claimant "kept a journal/diary for the past two years that documented her narcoleptic episodes and had never gone a week without documenting." (AR 17). Even assuming that claimant diligently and accurately recorded her symptoms in the symptom log, the recordations do not amount to medical findings. (AR 289-369). Instead, claimant's recorded symptoms reflect just that—her symptoms. There are no medical findings contained in the log and, further, it appears as though the log was intended only to aid in diagnosing and/or treating claimant's ailments. This does not provide the medical findings necessary for claimant to meet her burden in establishing her impairments meet Listing 11.02.

Next, claimant contends that the state agency medical consultant concluded that claimant's impairments should be evaluated under Listing 11.02. (Doc. 16, at 14). Claimant, however, misrepresents the state agency medical consultant's opinion by suggesting that the consultant believed claimant's impairment to medically equal Listing 11.02. Instead, the consultant specifically opined, "Frequency and severity of narcolepsy does not equal listing [11.02]." (AR 89). This too, then, cannot amount to medical evidence showing that claimant's narcolepsy meets the severity of Listing 11.02. To the contrary, the consultant's opinion would be evidence *against* claimant's assertion that her impairments medically equal Listing 11.02.

Claimant advances no other argument purporting to show how the ALJ erred in determining that claimant's impairments did not meet or medically equal the severity of Listing 11.02. As such, I respectfully recommend that the Court find that claimant did not meet her burden of establishing that her narcolepsy equaled the severity of Listing 11.02.

## E.    Unscheduled Breaks

Claimant's final argument is that the ALJ failed to include unscheduled breaks in his RFC assessment.  Claimant asserts that these unscheduled breaks are necessary due to her narcolepsy, chronic diarrhea, kidney disease, diabetes, and depression.  (Doc. 16, at 17).  Although it is difficult to discern exactly why claimant argues the ALJ erred in not including unscheduled breaks in the RFC assessment, claimant provides as follows:

> In the case at bar, the ALJ found that [claimant] had a number of conditions that were expected to produce the need for unscheduled absences or breaks.  The ALJ did not include any unscheduled absences or breaks in his residual functional capacity assessment.  The ALJ did not explain why he failed to include any unscheduled absences or breaks whatsoever.

(*Id.*, at 18).  To the best of my understanding, claimant's chief argument is that because the ALJ found that claimant suffered from certain impairments that usually require unscheduled breaks or absences, the ALJ also should have included such breaks and absences in his RFC assessment.

The Commissioner, in response, argues that claimant did not meet her burden of showing the need for unscheduled breaks or absences.  (Doc. 17, at 18).  Specifically, the Commissioner argues that claimant relies only on her own statements to support the assertion that she requires unscheduled breaks and absences.  (*Id.*, at 19).  With respect to claimant's diarrhea, the Commissioner further argues that the record shows that the diarrhea did not last, and would not be expected to last, for at least twelve months.  (*Id.*, at 20).  As a result, the Commissioner argues, the ALJ properly declined to include breaks due to the diarrhea.

Claimant bears the burden of establishing her RFC.  *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) ("We reiterate that RFC is determined at step four, where the burden of proof rests with the claimant.").  Claimant's bare allegations as to whether she requires unscheduled breaks or absences are not evidence.  Further, as claimant

indicates, "[a]n individual's residual functional capacity is derived from a comprehensive individualized assessment of the claimant's limitations." (Doc. 16, at 15 (citing *Mental Health Ass'n of Minn. v. Heckler*, 720 F.2d 965, 968 (8th Cir. 1983))). Because the RFC assessment is based on a claimant's individual abilities, a "one-size-fits-all" assessment of symptoms and the severity of those symptoms will not serve the interests of awarding benefits when warranted and denying benefits when unwarranted. For that reason, the ALJ properly declined to include unscheduled breaks and absences in claimant's RFC assessment for the sole reason that such limitations must *typically* be assessed for those who also suffer from the same ailments as claimant. Whether claimant requires unscheduled breaks and absences must be considered with respect to claimant's specific ailments and symptoms.

Claimant argues that narcolepsy "by its nature[ ] requires unscheduled breaks and absences." (Doc. 16, at 16). Likewise, immunosuppressive medications, such as the ones claimant alleges she must take, "have significant side effects, including fatigue." (*Id.*). Chronic kidney disease, which claimant suffers from "is also associated with fatigue." (*Id.*). Diabetes, which claimant has, "is closely related to fatigue." (*Id.*). Claimant suffers from major depressive disorder; "[f]atigue is one of the most prevalent presenting symptoms of major depressive disorder." (*Id.*, at 17). Claimant argues that she suffers from each of these ailments but offers only generalized statements about the side effects or symptoms one *may* experience as a result of each of these ailments. Claimant does not allege that she actually experiences fatigue to the point of needing unscheduled breaks or absences from work, nor does claimant point to any evidence in the record to support such a contention. As such, I find that the ALJ properly declined to include the need for unscheduled breaks and absences from work because of these ailments.

Claimant does make an individualized argument in favor of needing unscheduled breaks with respect to her chronic diarrhea. (*Id.*). I have already discussed claimant's alleged diarrhea, including whether the ALJ's assessment of claimant's diarrhea led to a faulty RFC assessment. As I stated above, the ALJ properly considered claimant's alleged diarrhea and found that claimant was not credible with respect to the frequency and severity of her alleged diarrhea. For that reason, the ALJ did not include unscheduled breaks due to claimant's diarrhea within his RFC analysis. The ALJ, sitting as the factfinder, is tasked with determining issues such as credibility. Based on his credibility assessment, the ALJ did not include unscheduled breaks in his RFC assessment. Although the record evidence could also support a finding that claimant does suffer from chronic diarrhea and, therefore, does require unscheduled breaks, I find that the ALJ's decision was within his "zone of choice." *Culbertson*, 30 F.3d at 939. Therefore, I respectfully recommend that the Court uphold the Commissioner's decision as to the ALJ's RFC assessment.

### F.      *Whether to Enter Judgment in Favor of Claimant*

Claimant requests that the Court reverse the ALJ's decision and enter judgment in favor of claimant. (Doc. 16, at 18). In the alternative, claimant requests that the Court reverse the ALJ's decision and remand the case for calculation of benefits. (*Id.*). The Commissioner argues that should the Court find the ALJ's decision erroneous, the Court should remand the case for further consideration. (Doc. 17, at 22).

I find that the issue of the "PREVIOUS TESTS" section in Dr. Geisler's notes requires further consideration. Based on the ALJ's decision, it is unclear what consideration, if any, the ALJ gave to the "PREVIOUS TESTS" section. Likewise, there is not enough information in the record to determine whether an award of benefits is proper. Therefore, I respectfully recommend that the Court reverse and remand the ALJ's decision with instructions to clearly explain the weight afforded to Dr. Geisler's

opinion. If less than controlling weight, I respectfully recommend that the Court instruct the ALJ to articulate precisely why he is affording Dr. Geisler's opinion less than controlling weight, which should include a discussion of the "PREVIOUS TESTS" section.

## VI. CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court **reverse and remand** this case for further consideration.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 7th day of May, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa